**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**ALLEEM ALBERT-WALKER BORDEN,**

*Plaintiff,*

v.

**WILLIAM GREEN, BADGE #110, *et al.*,**

*Defendants.*

**Case No. 2:23-cv-03654-JDW**

**MEMORANDUM**

I must decide whether Plaintiff Alleem Albert-Walker Borden, a detainee at SCI-Curran Fromhold, has enough evidence to proceed to trial against Defendants William Green, Badge #110 and Phillip M. Lydon, Badge #736. He does not, so I will grant summary judgment.

# I. BACKGROUND

## A. Facts

On September 7, 2021, in Upper Darby, Pennsylvania, police officers, including Officer William Green, Officer Michael Taylor, Officer Amanda Shephard, and Lt. Phillip Lydon, arrived at The Fresh Grocer at 421 South 69th Street in response to a fight involving a suspect with a gun. The officers determined that a third-party bystander had a gun but that it was not the gun from the fight, which someone had pointed at the victim. They kept looking for the gun from the fight. Although they didn't immediately find the gun,

they did find a Smith & Wesson loaded magazine with .40 caliber ammunition. They reviewed security footage and observed that Mr. Borden, a security guard at the grocery store, picked up the gun and carried it away.

Lt. Lydon spoke with Mr. Borden, who returned to the scene about five to ten minutes after the police arrived. Mr. Borden explained that he took the gun to a trash can in a nearby alley. Officer Green, Lt. Lydon, and Officers Amanda Shephard and William Sides accompanied Mr. Borden for several blocks as he led them to a building on Barrington Road, where he indicated the gun was wrapped in a green towel.

The officers told Mr. Borden he was under arrest. There was a struggle, during which Mr. Borden pushed Officers Green and Shephard while they attempted to subdue and handcuff him. Mr. Borden tried to run, and he charged into Officer Green, which forced him backward and caused him to strike the police vehicle. Mr. Borden swung his arm and struck Officer Green on the side of the head. Officer Green responded by striking Mr. Borden in the face with his elbow and the side of the head to get Mr. Borden under control. Even then, Mr. Borden refused to place his hands behind his back or otherwise to submit to the officers' control. He continued to kick his legs and tried to strike Officer Green in the face with his left hand. Officer Shephard tried to get Mr. Borden under control, but she could only get one handcuff on him. During the struggle, another officer, Officer Sides, used a taser on Mr. Borden, but it had no effect.

Lt. Lydon saw Mr. Borden struggle with the other officers. He gave Mr. Borden verbal commands to stop resisting. He then deployed his taser, which finally resulted in Mr. Borden's compliance. The officers then placed Mr. Borden in handcuffs. The officers recovered a semiautomatic .40 caliber Smith & Wesson.

**B. Procedural History**

Mr. Borden filed his Complaint on September 21, 2023. On statutory screening, I construed his complaint to contain five types of claims. I dismissed four of these for naming the incorrect plaintiff, improper timing, and deference to the state judicial process. *See Borden v. Green*, No. 23-CV-3654, 2024 WL 69815, at *2–4 (E.D. Pa. Jan. 5, 2024). However, I permitted Mr. Borden to pursue claims against Officer Green and Lt. Lydon for excessive force.

Officers Green and Lt. Lydon moved for summary judgment on December 11, 2024. Local Rule of Civil Procedure 7.1(c) required Mr. Borden to respond to Defendants' motion within 14 days, which elapsed on December 26, 2024. He did not respond, so on January 31, 2025, I issued an order extending his time to respond and cautioning him that if he did not respond, I would treat the motion as unopposed. On February 11, 2025, I ordered the Clerk Of Court to re-send the motion and my orders to Mr. Borden at an updated address. He has never responded to the Motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation modified). In ruling on a summary judgment motion a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation modified). However, "the non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation modified). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 79 n.6 (3d Cir. 2019) (quotation omitted).

"If a party fails to … properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion; [and] grant summary judgment if the motion and supporting materials including the facts

considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2)-(3). Thus, a moving party is not entitled to summary judgment as a matter of right just because the adverse party does not respond. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (quotation omitted). Instead, the court must conduct a full analysis to determine "whether the moving party has shown itself to be entitled to judgment as a matter of law." *Id.*

## III. DISCUSSION

Section 1983 "provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983)). To state a claim under Section 1983, a plaintiff must show that "some person has deprived him of a federal right" and "that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Excessive force is a violation of one's Fourth Amendment right against unreasonable seizures of his person.

Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Courts should not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Though a court need not identify a case "directly on point" for a right to be clearly established, "existing precedent must have placed the statutory or

constitutional question beyond debate." *Id.* at 741. As an affirmative defense, the burden of establishing qualified immunity falls on the official claiming it. *See Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011).

To determine if an officer's conduct is entitled to qualified immunity, courts ask two questions: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a federal right; and (2) whether the right at issue was clearly established when the conduct took place. *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). The first question overlaps with the merits of the liability determination, so I will assess Mr. Borden's excessive force claim by considering the two-prong qualified immunity test. Because he fails at the first step, I need not reach the second step of the inquiry.

To state a claim of excessive force under the Fourth Amendment, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). An officer seizes an individual when he restrains the individual's freedom to walk away. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). In this case, it is undisputed that Officer Green and Lt. Lydon seized Mr. Borden, so the remaining inquiry is whether the force they used in doing so was unreasonable.

The touchstone for excessive force is objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This analysis requires a balancing of multiple factors, weighing the intrusion on one's Fourth Amendment interests and the countervailing governmental

interests. *Id.* at 395–96. Courts consider the totality of circumstances, including "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is *actively resisting arrest or attempting to evade arrest by flight*." *Id.* (emphasis added). A factfinder must assess the reasonableness of a particular use of force "based upon the information the officers had when the conduct occurred," *Saucier v. Katz*, 533 U.S. 194, 207 (2001), not "with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396. And it must account for "the totality of the circumstances leading up to" the application of force, not just "the precise moment of" the application of that force. *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016) (quotation omitted). Importantly, officers' "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The Third Circuit has clarified that "police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (citation modified).

There's no dispute that might permit a reasonable juror to conclude that Officer Green or Lt. Lydon violated Mr. Borden's rights. When Officer Green informed Mr. Borden that Mr. Borden was under arrest, Mr. Borden attempted to flee and knocked Officer Green against the police car. In the ensuing struggle, Officer Green "struck [Mr.] Borden in the face with his elbow and punched him in the side of his head," but only after Mr. Borden "swung his arm and struck Officer Green on the left side of the head" while attempting to

flee. (ECF No. 24 at ¶11.) Officer Green struggled with Mr. Borden only to the extent necessary to make the arrest. Considering all the circumstances and because Officer Green had the right to defend himself and to effect the arrest, his actions were objectively reasonable.

The same is true for Lt. Lydon, who observed the officers' struggle with Mr. Borden and ordered Mr. Borden to stop resisting arrest. After the verbal warning, Lt. Lydon tased Mr. Borden to incapacitate him and to facilitate the arrest. Courts in this district have held that using a taser after a warning is proportional and reasonable. *See Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 738–40 (E.D. Pa. 2014) (collecting cases). I agree. Under the circumstances, faced with a suspect who resisted one taser shot and continued to use physical force against the assembled officers, Lt. Lydon acted reasonably by any objective measure.

Because both Officer Green and Lt. Lydon used force in an objectively reasonable way, they did not violate Mr. Borden's constitutional rights. Mr. Borden therefore can't proceed with his claims, and Officer Green and Lt. Lydon are entitled to qualified immunity.

## IV. CONCLUSION

The facts in the Defendants' Statement Of Facts, which I take as undisputed in light of Mr. Borden's lack of opposition, demonstrate that neither Officer Green nor Lt. Lydon violated Mr. Borden's Fourth Amendment rights. I will therefore grant them summary judgment. An appropriate order follows.

**BY THE COURT:**

*<u>/s/ Joshua D. Wolson</u>*
HON. JOSHUA D. WOLSON

July 31, 2025